UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

VICTOR HUGO OREGEL AMEZCUA,
Petitioner,
v.
KRISTI NOEM, et al.,
Respondents.

Case No. 5:26-cv-01070-SRM-AGR

**ORDER GRANTING *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER [3]**

Before the Court is Petitioner Victor Hugo Oregel Amezcua's ("Petitioner") *ex parte* application for a temporary restraining order. Dkt. 3. Respondents Kristi Noem, Pamela J. Bondi, Thomas P. Giles, and Warden (collectively, "Respondents") oppose the *ex parte* application ("Opposition"). A hearing was held on this matter on March 18, 2026.

After considering the parties' written and oral arguments, relevant legal authority, and record in this case, the *ex parte* application is **GRANTED**.

## I. BACKGROUND

The following facts are derived from the verified allegations in the Petition for Writ of Habeas Corpus ("Petition"), Dkt. 1, and exhibits attached to Respondents' Opposition, Dkts. 11-1–11-4.

Petitioner is a Mexican national and citizen. Dkt. 1 at 3. Petitioner has a wife, three children, and nine grandchildren, all of whom are United States citizens. *Id.* In 1992, he entered the United States without admission or parole. *Id.* He became a lawful permanent resident ("LPR") in 2001. *Id.* Since then, Petitioner has worked in the food and service industry to provide for his family. *Id.* Sometime after 2008, Petitioner obtained three misdemeanor convictions. *See id.*

According to Petitioner, on January 27, 2025, two Immigration and Customs Enforcement ("ICE") officers stopped him as he was walking home from the hospital in Anaheim, California. *Id.* at 4. After confirming Petitioner's name, the ICE officers arrested him, took him into custody, and eventually transferred him to the Adelanto ICE Processing Center, where he has since remained. *Id.*

On February 12, 2026, Petitioner moved the immigration court for a custody redetermination hearing but did not receive a response. *See id.* at 8, 15–16. He claims that it is evident he is being subjected to mandatory detention under 8 U.S.C. § 1225(b)(2). *Id.* at 8. After approximately five to six months in custody, the Department of Homeland Security ("DHS") requested that the Executive Office of Immigration Review ("EOIR") provide Petitioner with a custody redetermination hearing.[1] *See* Dkt. 15. On July 24, 2025, the immigration court scheduled a redetermination hearing for August 4, 2025. Dkt. 11-2 at 1. According to Respondent, Petitioner withdrew the request for a redetermination hearing. Dkt. 11-3 at 1.

After nearly 11 months in immigration detention, on February 24, 2026, Immigration Judge Bryan DePowell ordered Petitioner removed from the United States to Mexico. Dkt. 11-1 at 1, 3–4. Petitioner reserved the right to appeal the removal order to the Board of Immigration Appeals. *Id.* at 4. The deadline to file his appeal is March 26, 2026. *See id.* ("Appeal Due: 03/26/2026"). There is no evidence in the record that Petitioner has filed an appeal.

---

[1] This fact is derived from Respondents' counsel's representation at the March 18 hearing.

On March 5, 2026, Petitioner, on his own, filed a Petition for a Writ of Habeas Corpus. *See* Dkt. 1. Named as Respondents are Kristi Noem, Pamela J. Bondi, Thomas P. Giles, and Warden. *Id.* at 1. Petitioner raises the following claims: (1) a Fifth Amendment substantive due process claim; (2) a Fifth Amendment procedural due process claim based on Respondents' failure to provide him notice and an opportunity to be heard upon his detention; (3) a Fifth Amendment procedural due process claim based on Respondents' failure to provide him a bond hearing after 6-months following his detention; and (4) an Administrative Procedures Act ("APA") claim that asserts that his detention under 8 U.S.C. § 1225(b) is unlawful.[2] *See* Dkt. 1 at 6–19.

Along with the Petition, Petitioner filed this *ex parte* application for a temporary restraining order. *See* Dkt. 3. Petitioner argues he is entitled to temporary injunctive relief and requests his immediate release, or in the alternative, a bond hearing before this Court. *Id.* at 13. Respondents filed their Opposition to the *ex parte* application. *See* Dkt. 11. A hearing was held on March 18, 2026. Dkt. 15.

The matter is fully briefed and ready for decision.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) governs temporary restraining orders ("TRO"). A TRO is an extraordinary remedy meant to preserve the *status quo* and to prevent irreparable harm "just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). To obtain a TRO, the movant must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

[2] Petitioner was proceeding *pro se* when he filed the Petition. The Court must construe *pro se* habeas petitions liberally. *Clark v. Broomfield*, 83 F.4th 1141, 1148 (9th Cir. 2023). Thus, while Petitioner does not utter the words "Administrative Procedures Act" in the Petition, the Court infers Petitioner is raising an APA claim from his request that this Court declare that his ongoing detention violates the Immigration and Nationality Act. *See* Dkt. 1 at 18.

injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). These are known as the *Winter* factors. The final two factors merge when a TRO is sought against the government, as is true here. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

In cases where there may be a strong showing on the balance of hardships but a weaker showing on the likelihood of success, a movant may still obtain a TRO under the Ninth Circuit's sliding-scale approach. *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022). Under this sliding-scale approach, a movant may obtain a TRO if he can show (1) there are serious questions going to the merits, (2) there is a likelihood of irreparable injury, (3) the balance of hardships tips sharply towards the movant, and (4) the injunction is in the public's interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "'Serious questions' are ones 'that "cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation."'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024) (quoting *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023)). "They 'need not promise a certainty of success, nor even present a probability of success, but must involve a "fair chance of success on the merits."'" *Id.* (quoting *Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). Even under this sliding-scale approach, a movant must still "make a showing on all four prongs." *Cottrell*, 632 F.3d at 1135.

The movant carries the burden of persuasion and must make a clear showing of entitlement to the requested relief. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). Given the exigent nature of a TRO, a movant can rely on allegations in a verified complaint, exhibits, declarations, or affidavits, even if inadmissible under the Federal Rules of Evidence. *See Thalheimer v. City of S.D.*, 645 F.3d 1109, 1116 (9th Cir. 2011) ("A verified complaint may be treated as an affidavit, and, as such, it is evidence that may support injunctive relief."), *overruled on other grounds by Board of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc); *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even

inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."); *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) ("A verified complaint or supporting affidavits may afford the basis for a preliminary injunction."). Unverified allegations in the pleadings and unsupported and conclusory statements are not enough to prevail on a motion for a TRO. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (reversing district court's order granting preliminary injunction where it relied on unsupported and conclusory statements); *Greenberg v. Guzman*, No. CV 14-00866, 2014 WL 12569551, at *2 (C.D. Cal. July 28, 2014) ("A motion for preliminary injunction must be supported by '[e]vidence that goes beyond the unverified allegations of the pleadings.'") (quoting 9 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2949 (2011)).

## III. DISCUSSION

Before turning to the merits of Petitioner's *ex parte* application, the Court first addresses whether it has subject matter jurisdiction over Petitioner' claims, and whether Petitioner has exhausted his administrative remedies.

### A. Subject Matter Jurisdiction

Respondents argue this Court lacks subject matter jurisdiction to decide Petitioner's claims for two reasons. First, they contend "there is no jurisdiction to mount a collateral attack on his removal proceedings" because his claims are barred under 8 U.S.C. § 1252(a)(5) and 1252(b)(9). Dkt. 11 at 3–5. Second, Respondents argue that 8 U.S.C. § 1252(g) strips the Court of jurisdiction "to the extent Petitioner's generic claims challenge" the government's decision or action to commence proceedings, adjudicate cases, or execute removal orders. *Id.* at 5–6.

#### 1. 8 U.S.C. § 1252(a)(5) and 1252(b)(9)

Title 8 U.S.C. § 1252 ("Section 1252") is titled "Judicial review of orders of removal." Section 1252(a)(5) and (b)(9) are "two provisions aimed at channeling noncitizens' claims into the petition-for-review process." *Ibarra-Perez v. United States*, 154 F.4th 989, 999 (9th Cir. 2025). Section 1252(a)(5) specifically provides that "a petition

for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of *an order of removal*[.]" 8 U.S.C. § 1252(a)(5) (emphasis added).

Section 1252(b)(9) is "a 'zipper clause' that consolidates all 'questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien' into a petition for review." *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) (quoting 8 U.S.C. § 1252(b)(9)). The Supreme Court has cautioned against reading the "arising from" language in Section 1252(b)(9) expansively because it would lead to "absurd" results and make certain claims challenging a noncitizen's detention "effectively unreviewable." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018). "[C]laims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016). Section 1252(b)(9) thus "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (citation modified).

In arguing Section 1252(a)(5) and (b)(9) strips the Court of jurisdiction over this action, Respondents attempt to recast Petitioner's claims as claims that directly or collaterally challenge the validity of the immigration judge's removal order and Respondents' decision to commence, adjudicate, or execute the removal order. *See* Dkt. 11 at 2–6. But a careful reading of the Petition reveals that Petitioner neither seeks to invalidate or challenge the immigration judge's removal order (which is not yet final), nor does he challenge Respondents' authority to commence proceedings, adjudicate his removal, or execute the removal order. Instead, Petitioner challenges whether Respondents afforded him adequate due process when they deprived him of his liberty interest, whether his ongoing detention violates due process, and relatedly, whether Respondents' conduct violates the Immigration and Nationality Act and its implementing regulations. Such claims are not barred under Section 1252(a)(5) or (b)(9). *See Ibarra-Perez*, 154 F.4th at

1000 (concluding Section 1252(a)(5) where petitioner did not seek review of his removal order); *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) ("[C]laims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process.").

2. 8 U.S.C. § 1252(g)

Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim . . . from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any" noncitizen. 8 U.S.C. § 1252(g). This section should be read narrowly to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez*, 154 F.4th at 996 (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at 997. In fact, the Ninth Circuit has specifically held that Section "1252(g) does not bar due process claims." *Id.* (citing *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998)).

As discussed above, contrary to Respondents' argument, Petitioner does not challenge Respondents' decision to commence, adjudicate, or execute the removal order. *See* discussion *supra,* Section III.A.1. Thus, section 1252(g) thus does not strip this Court of jurisdiction to hear Petitioner's claims.

**B. Administrative Exhaustion**

A habeas petitioner must "exhaust all available judicial and administrative remedies before seeking relief under [8 U.S.C.] § 2241." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). Title 28 U.S.C. § 2241 ("Section 2241") "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Castro-Cortez v. Immigr. & Naturalization Serv.*, 239 F.3d 1037, 1047 (9th Cir. 2001). Exhaustion in Section 2241 habeas proceedings is a prudential

requirement, not a jurisdictional one. *Acevedo-Carranza*, 371 F.3d at 541. Prudential exhaustion may be required if:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quotation marks omitted). Even if these factors weigh in favor of prudential exhaustion, this requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

Petitioner argues that administrative exhaustion should be waived as futile because there is no genuine opportunity for relief in the immigration courts. Dkt. 1 at 7–12; Dkt. 3 at 6–7. He contends that immigration judges are denying bond hearings to noncitizens who are living in the interior of the country, like Petitioner, by classifying them as applicants for admission, who are not entitled to bond hearings under 8 U.S.C. § 1225(b)(2). *Id.* at 7. Indeed, this issue is currently pending appeal in the Ninth Circuit. *Bautista v. Santacruz*, No. 5:25-cv-01873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026), *appeal docketed*, No. 26-1044 (9th Cir. Feb. 23, 2026). Petitioner argues it would thus be futile to request a bond hearing because the immigration judge would classify him as an applicant for admission and conclude he is not entitled to a bond hearing. *See id.*

In the Petition, Petitioner raises a substantive due process claim, several procedural due process claims, and an APA claim that asserts that his detention under 8 U.S.C. § 1225(b) is unlawful. *See* Dkt. 1 at 6–19. In opposition, Respondent broadly cites to *Puga v. Chertoff,* 488 F.3d 812, 815 (9th Cir. 2007) in arguing that courts must require petitioners

to exhaust administrative remedies before entertaining a habeas petition, but fails to identify what administrative remedy is available to Petitioner regarding his due process claims. Dkt. 11 at 1–2. Because prudential exhaustion is not a jurisdictional requirement, the Court defers ruling on this issue at this stage.

**C. Temporary Restraining Order**

Petitioner argues he is entitled to temporary injunctive relief on his Fifth Amendment substantive due process claim, Fifth Amendment procedural due process claim based on Respondents' failure to provide him notice and an opportunity to be heard upon his detention; a Fifth Amendment procedural due process claim based on Respondents' failure to provide him a bond hearing after 6-months following his detention; and an Administrative Procedures Act ("APA") claim that asserts that his detention under 8 U.S.C. § 1225(b) is unlawful. *See* Dkt. 3. As discussed below, because Petitioner was deprived of notice and an opportunity to be heard upon his detention, he is entitled to the full scope of temporary injunctive relief based on one of his procedural due process claims. Thus, the Court declines to consider whether he is entitled to the same injunctive relief as to the remaining claims.

1. Likelihood of Success on the Merits

The Fifth Amendment's Due Process Clause prohibits the government from depriving a person of life, liberty, and property without due process of law. *See* U.S. Const. amend. V. At its core, due process requires the government to give a person reasonable notice and an opportunity to be heard. *See A. A. R. P. v. Trump*, 605 U.S. 91, 94–95 (2025) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). These protections extend to all persons physically present in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). This includes noncitizens whose presence is "lawful, unlawful, temporary, or permanent." *Id.* The Supreme Court has repeatedly held for over a century that noncitizens present in the United States must be afforded certain procedural due process protections, "though the nature of that protection may vary depending upon status and circumstance." *Id.*; *see also A. A. R. P.*, 605 U.S. at 94 ("'It is well established that the

Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Zadvydas*, 533 U.S. at 693 (holding that the Due Process Clause protects noncitizens subject to a final order of deportation); *Reno*, 507 U.S. at 306 (determining that due process is afforded to noncitizens); *Wong Wing v. United States*, 163 U.S. 228, 238 (1986) (concluding that the Due Process Clause protects noncitizens subject to removal order); *Yamataya v. Fisher*, 189 U.S. 86, 100 (1903) (stating that administrative officers may not disregard due process of law when executing the deportation of noncitizens).

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances."). A two-step analysis is employed to analyze a procedural due process claim. *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). First, a court must determine whether the plaintiff "was deprived of a constitutionally protected liberty or property interest." *Id.* Second, if a protected interest exists, a court then weighs three factors to determine "whether that deprivation was accompanied by sufficient procedural protections." *Id.* The three factors are (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). These are known as the *Mathews* factors.

Due process usually "requires some kind of a hearing *before* the [government] deprives a person of liberty[.]" *Zinermon*, 494 U.S. at 127; *see also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978) ("Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant [liberty] interest."). However, a prompt post-deprivation hearing may suffice in special cases but

only "when prompt action is required, an important government interest is involved, and there is substantial assurance that the deprivation is not baseless or unwarranted." *Shinault v. Hawks*, 782 F.3d 1053, 1058 (9th Cir. 2015).

i. Constitutionally protected liberty interest

"Lawful permanent resident aliens are the most favored category of [noncitizens] admitted to the United States." *Kim v. Ziglar*, 276 F.3d 523, 528 (9th Cir. 2002), *rev'd sub nom.*, *Demore v. Kim*, 538 U.S. 510 (2003). This is because "[t]he immigration laws give LPRs the opportunity to establish a life permanently in this country by developing economic, familial, and social ties indistinguishable from those of a citizen." *Demore*, 538 U.S. at 544 (Souter, J., concurring in part and dissenting in part) (citations omitted).

> Once they are admitted to permanent residence, LPRs share in the economic freedom enjoyed by citizens: they may compete for most jobs in the private and public sectors without obtaining job-specific authorization, and apart from the franchise, jury duty, and certain forms of public assistance, their lives are generally indistinguishable from those of United States citizens. That goes for obligations as well as opportunities. Unlike temporary, nonimmigrant aliens, who are generally taxed only on income from domestic sources or connected with a domestic business, LPRs, like citizens, are taxed on their worldwide income.

*Id.* LPRs thus possess particularly strong liberty interests. *See id.* at 543–44 (Souter, J., concurring in part and dissenting in part) ("The constitutional protection of an alien's person and property is particularly strong in the case of aliens lawfully admitted to permanent residence (LPRs)."); *Chen v. Aitken*, 917 F. Supp. 2d 1013, 1016 (N.D. Cal. 2013) (explaining that legal permanent residents are entitled to greater due process protections than other noncitizens because once admitted to the United States, they begin

to develop ties that accompany legal permanent residency). LPRs possess, for example, a protected liberty interest in serving and maintaining ties with their community and family. *See Duong v. Kaiser*, No. 25-cv-7598, 2025 WL 2578275, at *2 (N.D. Cal. Sept. 6, 2025) (concluding petitioner, who was a legal permanent resident, "has a protected liberty-interest in remaining out of custody, which would allow him to continue to serve his community and provide for his family"). Most importantly here, LPRs have a "liberty interest in remaining free from governmental restraint[.]" *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1078 (N.D. Cal. 2004); *see also Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024) (concluding that LPRs had a significant liberty interest in being free from imprisonment); *Pham v. Becerra*, 717 F. Supp. 3d 877, 880, 886 (N.D. Cal. 2024) (concluding petitioner, a legal permanent resident, "has an independent liberty interest in being free from physical restraint"); *Small v. Reno*, 127 F. Supp. 2d 305, 320 (D. Conn. 2000) (concluding that petitioner, a legal permanent resident, possessed a "fundamental liberty interest in freedom from restraint without a detention or bond hearing during his removal proceedings"). LPRs do not lose their due process protections and liberty interest merely because they are subject to removal; as Respondents conceded at the hearing, a LPR has a legal right to remain in the United States and only loses lawful status "upon entry of a final administrative order of exclusion, deportation, removal, or recission." 8 C.F.R. § 1001.1(p); *see also* 8 U.S.C. § 1256(a); *Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010) ("[E]ven where there are grounds to seek deportation or removal, a lawful permanent resident is lawfully present in the United States until a final deportation or removal order is entered.") (quoting *Hernandez de Anderson v. Gonzalez*, 497 F.3d 927, 943 (9th Cir. 2007)); *Small*, 127 F. Supp. 2d at 321 ("Absent a final order of removal, the petitioner maintains his status as a lawful permanent resident alien, with the constitutional status that accompanies the ties the petitioner has developed during his twenty-plus years of legal residence in this country.").

The parties do not dispute that Petitioner is still a LPR seeing as the removal order is not yet final. Nor do they dispute that Petitioner possesses protected liberty interests that accompanies his status as a LPR, including his right to remain free from immigration

custody and to support and maintain ties with his family, all of whom are United States citizens. Petitioner thus possessed a constitutionally protected liberty interest when ICE detained him.

ii. The *Mathews* Factors

Having determined that Petitioner has protected liberty interests, the Court now weighs the three *Mathews* factors to determine whether Petitioner's detention was accompanied by sufficient procedural protections. Based on this record, the *Mathews* factors weigh in favor of concluding that Respondents did not provide Petitioner with adequate procedural protections when they detained him.

First, Petitioner had a significant liberty interest that was affected by Respondents' actions. Petitioner was a LPR when he was detained. As a LPR, Petitioner possessed a weighty liberty interest in remaining free from immigration custody, which "is of the highest constitutional import." *Zavala*, 310 F. Supp. 2d at 1078. Thus, this *Mathews* factor weighs in favor of concluding that Respondents violated Petitioner's procedural due process rights.

Second, there was significant risk that Petitioner was erroneously deprived of his liberty interests through the procedural protections Respondents provided him when they detained him. Civil immigration detention serves two purposes: to ensure a noncitizen's appearance at future immigration proceedings and to prevent danger to the community. *See Zadvydas*, 533 U.S. at 690. Here, there is no evidence that Respondents notified Petitioner of his pending detention, or the reasons for detention. Petitioner was asked his name, and thereafter he was arrested. Dkt. 1, at 4. Moreover, Respondents failed to offer Petitioner a hearing before or promptly after his detention, the first being offered on August 4, 2025, six months after his arrest. Dkt. 11-2. Respondents offer no explanation for the delay. Had Respondents provided Petitioner with notice and a prompt hearing, these procedures would have mitigated the risk of erroneous arrest, and Petitioner may have been able to demonstrate why his detention was not warranted. *See Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025) ("Given the absence of any evidence justifying

petitioners' detention, there is a significant risk that the deprivation of their liberty in the time between their arrest and a post-arrest bond hearing under § 1226 would be entirely unjustified. Providing them with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis."); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (concluding second *Mathews* factor weighed in noncitizen's favor where pre-deprivation hearing would have allowed petitioner to explain why his inability to comply with a condition of release did not justify re-detention). Accordingly, this *Mathews* factor weighs in favor of finding Respondents violated Petitioner's procedural due process rights.

Finally, while the government has a strong interest in ensuring that noncitizens do not pose a flight risk or danger, the government's interest in detaining a noncitizen without notice or a pre-deprivation hearing imposes minimal financial or administrative burdens as compared to the cost of detaining a noncitizen pending a bond hearing, or removal, where it is unwarranted. *See Pablo Sequen*, 806 F. Supp. 3d at 1090 (explaining that the government has minimal interest in re-detaining a noncitizen who does not pose danger or a flight risk because custody hearings are routine and it is likely that the cost to the government of detaining [petitioner] pending any bond hearing would significantly exceed the cost of providing her with a pre-detention hearing); *Ramirez Tesara*, 800 F. Supp. 3d at 1137 (similar); *Pinchi*, 792 F. Supp. 3d at 1036 (similar). Notably, Respondents make no attempt to show that Petitioner was, or is, a flight risk or a danger to the community. Therefore, this *Mathews* factor weighs in favor of concluding that Respondents violated Petitioner's procedural due process rights.

Considering that all three *Mathews* factors weigh in favor of Petitioner, he has made a clear showing that he is likely to succeed on his Fifth Amendment procedural due process claim based on Respondents' failure to provide him with notice and a prompt hearing when they deprived him of his liberty interest. In turn, this *Winter* factor weighs in favor of granting Petitioner temporary injunctive relief.

2. Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). As discussed, Petitioner has made a clear showing that Respondents likely deprived him of his procedural due process rights when they detained him without notice or a prompt hearing. "'[N]o further showing of irreparable injury is necessary.'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1037 (N.D. Cal. 2025) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)); *see also Valencia Zapata v. Kaiser*, No. 25-cv-07492, 2025 WL 2578207, at *3 ("It follows inexorably from the conclusion that Petitioners' detention without a pre-detention hearing is likely unconstitutional, that they have also carried their burden as to irreparable harm.") (citation modified).

Accordingly, this *Winter* factor weighs in favor of granting Petitioner temporary injunctive relief.

3. Balance of Equities and Public Interest

In addition, Petitioner and "[t]he public ha[ve] a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Jorge M.F. v. Wilkinson*, No, 21-cv-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)). Petitioner also stands to suffer considerable harm if he remains unlawfully detained given that Respondents did not afford Petitioner with adequate procedural safeguards before his detention. Respondents, by contrast, will suffer minimal injury with a short delay in detaining Petitioner. "Faced with a conflict between minimally costly procedures and preventable human suffering, the Court has little difficulty concluding that the balance of hardships tips decidedly in Petitioner['s] favor." *Valencia Zapata*, 2025 WL 2578207, at *4.

Accordingly, this *Winter* factor weighs in favor of granting temporary injunctive relief.

4. Scope of Relief

A temporary restraining order is meant to preserve the *status quo* and to prevent irreparable harm before a hearing can be held on a preliminary injunction. *Granny Goose*, 415 U.S. at 429. For purposes of a temporary restraining order, "[t]he status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). Moreover, the Ninth Circuit has "long held that injunctive relief must be tailored to remedy the specific harm alleged." *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015).

Here, Petitioner's last uncontested status was the moment before his detention. Thus, a temporary restraining order requiring his immediate release would return him to the *status quo*. *See Valencia Zapata*, 2025 WL 2578207, at *4 (collecting cases).

5. Bond

A court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court "with discretion as to the amount of security required, *if any*."'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). A district court "'may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm'" to the nonmovant. *Id.* (quoting *Jorgensen*, 320 F.3d at 919). The nonmovant is not absolved of its "obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003).

Here, Respondents have not presented any evidence that would show a bond is necessary in this case. The Court thus exercises its discretion and waives the bond requirement.

## IV. CONCLUSION

For the above reasons, the *ex parte* application is **GRANTED** as follows:

1. Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are **ORDERED** to immediately release Petitioner from immigration custody. Respondents must file a declaration by March 26, 2026, at 5:00 p.m. confirming Petitioner has been released from immigration custody. Respondents are **TEMPORARILY ENJOINED** from imposing any conditions of release that did not exist before Petitioner's detention, unless such conditions are deemed necessary at a future bond hearing.
2. Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are **TEMPORARILY ENJOINED** from re-detaining Petitioner without notice of the reasons for why they intend to re-detain him and without a pre-deprivation hearing before a neutral decisionmaker, unless special circumstances exist that justify immediate re-detention and a post-deprivation hearing;
3. This order will remain in effect until April 22, 2026, at 5:00 p.m. This order may be extended for good cause or with Respondents' consent;

//

//

//

4. Respondents are **ORDERED TO SHOW CAUSE**, in writing, why a preliminary injunction should not issue. This response is due by April 1, 2026. Petitioner may file a response by April 8, 2026. The Court will set a hearing only if necessary.

**IT IS SO ORDERED.**



Dated: March 25, 2026

HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE